## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

| | |
|---|---|
| CHARLES KEVIN TAYLOR, | |
| Plaintiff, | CIVIL ACTION NO.: 6:17-cv-135 |
| v. | |
| ART VILLEGAS; ROBERT DANIEL DISMUKE; KEVIN BESSENT; and CHRISTOPHER ANTHONY GINO HARRISON, | |
| Defendants. | |

## O R D E R

Presently before the Court is Defendant Art Villegas' Motion for Summary Judgment, (doc. 34). This case arises out of a series of events in Lyons, Georgia, that resulted in the arrest of Plaintiff Charles Kevin Taylor. Plaintiff asserts that Defendants Art Villegas, Robert Daniel Dismuke, Kevin Bessent, and Christopher Anthony Gino Harrison conspired to maliciously arrest and prosecute him in violation of federal and Georgia law.[1] (Doc. 1, pp. 9–20.) For the reasons set forth below, the Court finds that Plaintiff has failed to support any of his claims with enough evidence to survive summary judgment as to Defendant Villegas. Moreover, even if a genuine dispute of material fact existed as to the merits of Plaintiff's claims, Defendant would be shielded from Plaintiff's federal claims by qualified immunity. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment, (doc. 34). The Court **DIRECTS** the Clerk of Court

---

[1] Plaintiff initially asserted claims against Terry Smith, a Sheriff's Deputy in Toombs County. (Doc. 1.) However, the Court terminated Terry Smith as a defendant pursuant to a Joint Stipulation of Dismissal. (Doc. 26.) While Defendants Dismuke, Bessent, and Harrison are still parties to this action, the present Motion was filed solely on behalf of Defendant Villegas. (Doc. 34.)

to enter the appropriate judgment and **TERMINATE** Defendant Villegas as a party to this case. Plaintiff's counsel shall file a status report within **fourteen days** of the date of this Order updating the Court on the status of Plaintiff's claims as directed more specifically below.

## BACKGROUND

### I.     Procedural History

Plaintiff filed this suit in the Superior Court of Toombs County on September 13, 2017, alleging violations of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 and violations of Georgia law.  (Doc. 1, pp. 9–20.)  Defendants subsequently removed the case to this Court pursuant to 28 U.S.C. § 1446.  (See id. at pp. 1–5.)

Plaintiff, who was employed as a maintenance supervisor for the City of Lyons Housing Authority ("Housing Authority"), (doc. 40, p. 1), alleges that, after he removed Defendant Bessent from working on a roofing job, Bessent and the other Defendants conspired to "cause [his] false arrest and prosecution" and, in furtherance of this conspiracy, Defendants "plant[ed] drugs in [his] work vehicle" and "provided false information to the [Georgia Bureau of Investigation]."  (Doc. 34-1, pp. 9–20.)  As a result, Plaintiff contends Defendants are liable for: malicious prosecution in violation of the Fourth Amendment and Georgia law (Counts III, VII); malicious or false arrest in violation of Georgia law (Count II); attorney's fees under 42 U.S.C. § 1988 and Georgia law (Count V);[2] and punitive damages under Georgia law (Count IV).[3]  (Id. at pp. 15–20.)  Defendant

---

[2]  While Count V does not request attorney's fees pursuant to 42 U.S.C. § 1988, Plaintiff cites the statute in his "Prayer for Relief."  (Doc. 1, p. 19.)

[3]  In his Response to Defendant Villegas' Motion to Dismiss (which has been addressed by the Court via a May 17, 2018 Order, (doc. 30)), Plaintiff stated that he did "not oppose Defendant Villegas' Motion as to the false imprisonment claim, (Count One), and the false arrest claim brought pursuant to 42 U.S.C. § 1983 (Count Six)" as they were "subsumed into Plaintiff's malicious prosecution claims." (Doc. 13, p. 4). Accordingly, the Court dismissed these claims, (doc. 30, p. 8).  See McMaster v. United States, 177 F.3d 936, 940–41 (11th Cir. 1999) (dismissal of abandoned claim proper where plaintiff did not present argument

Villegas filed this Motion for Summary Judgment on September 10, 2018. (Docs. 34, 34-1, 34-2, 35, 36.) Plaintiff filed a Response, (doc. 40), and Defendant filed a Reply, (doc. 42).

## II.    Factual Background

The events giving rise to this action began in May 2015, when employees of Sweet Onion Construction, Inc. ("Sweet Onion"), which is owned by Defendant Dismuke, (doc. 40, p. 1), were working on a project for the Housing Authority at the Gould Mosley Village Apartments in Lyons, Georgia. (Doc. 34-2, p. 2.) Plaintiff and Defendant Bessent, a Sweet Onion employee, were both tasked with supervising the Sweet Onion roofing contractors—Plaintiff on behalf of the City, and Bessent on behalf of Sweet Onion. (Doc. 34-1, p. 2.) On May 1, 2015, while on the job site, Plaintiff noticed that Bessent was not laying shingles correctly. (Doc. 35-1, pp. 130–31.) Plaintiff relayed these observations to his boss, Patricia Murphy, and Murphy instructed Plaintiff to "shut the [entire] job down." (Id.; doc. 40, p. 2.) Before Plaintiff could do so, however, Defendant Dismuke convinced Murphy that removing Bessent from the job was a better alternative to terminating the entire operation. (Doc. 40, p. 2.) Plaintiff informed Bessent of Murphy's decision and instructed him to leave the job. (Id.; doc. 35-1, pp 130–31.)

On May 8—one week later—Dismuke called Defendant Villegas, an officer with the City of Lyons Police Department ("Police Department").[4] (Doc. 40, pp. 2–3; doc. 34-1, pp. 2–4.) During their call, Dismuke told Villegas that an inspector for the Housing Authority named "Kevin" had attempted to sell drugs to some Sweet Onion employees, including Bessent. (Doc.

---

for claim contained in complaint). Additionally, although Plaintiff's Complaint does not contain a separate count for civil conspiracy, the Order ruling on Defendant Villegas' Motion to Dismiss noted the existence of conspiracy claims "embed[ed]" into other claims. (Doc. 30 at p. 4.) The Court concluded "that the conspiracy allegations in Plaintiff's instant complaint are sufficiently pled to withstand Defendant Villegas's present motion to dismiss." (Id. at 7.)

[4] Villegas and Dismuke were familiar with one another through their sons who went to the same high school; additionally, Dismuke hired Villegas' son to work at Sweet Onion. (Doc. 34-3, p. 5.)

40, pp. 2–3; doc. 34-3, p. 2.)  Villegas advised that Bessent needed to give a statement at the Police

Department.  (Doc. 34-2, p. 3.)  Shortly thereafter, Bessent met with Villegas and provided a

written statement, explaining that "Kevin" approached him "around April 8th, 2015" and "said

that he found [some] pot and pills in a unit they were cleaning and wanted to know if I wanted

them or if I knew someone that wanted any."  (Id.; doc. 34-3, p. 10.)  At some point, Villegas also

spoke to Police Chief Wesley Walker.  (Doc. 34-4, p. 2; doc. 34-3, p. 3.)  Villegas said that he

"received information" that the Housing Authority's "maintenance supervisor . . . was attempting

to sell illegal drugs to roofing workers" at a job site.  (Doc. 34-4, p. 2.)  According to Walker, it

was standard protocol for officers to notify him about "suspected drug activity," and for the Police

Department to relay these tips to the Georgia Bureau of Investigation's Southeastern Regional

Drug Task Force ("Task Force").  (Id. at pp. 2–3.)  Accordingly, after talking with Villegas, Walker

called Task Force Agent Josh Thompson.  (Id.)  However, Walker was not the only person to

contact Agent Thompson.  That same day, Sheriff's Deputy Terry Smith called Agent Thompson

to report a call he received from Dismuke alleging that Plaintiff was offering to sell drugs to Sweet

Onion employees.  (Doc. 34-5, pp. 2–3.)  After talking to Deputy Smith, Agent Thompson spoke

with Dismuke directly.  (Id. at p. 3.)  Dismuke told Agent Thompson that Plaintiff had tried to sell

drugs to Bessent in April of 2015.  (Id.)  In a second phone call, Dismuke told Agent Thompson

that, earlier that same day, Plaintiff attempted to sell drugs to another employee named Christopher

Harrison.  (Id.)  Agent Thompson then spoke directly with Harrison, who told him that Plaintiff

had offered him drugs between 10:15 and 10:30 a.m.  (Id.)  Harrison also told Agent Thompson

that after he rejected the offer, Plaintiff wrapped the drugs in a paper towel and put them in his

"work truck."  (Id.)

At this point, Agent Thompson believed the Task Force had probable cause to question Plaintiff. (Id. at p. 4.) Agent Thompson apprised Task Force Agent Joshua Contreras of the information he received from Dismuke and Harrison and instructed him to speak with Plaintiff at the Housing Authority's job site. (Id.) Per Agent Thompson's instructions, Contreras went to the job site with Investigator Wayne Waldon and, upon their arrival, asked Plaintiff for permission to search his vehicle. (Id. at pp. 3–4; doc. 34-4, p. 3.) Plaintiff consented. (Doc. 34-5, p. 4; doc. 40, p. 5.) Contreras conducted the search and found drugs inside Plaintiff's work truck. (Doc. 40, p. 5.) Contreras then placed Plaintiff under arrest and transported him to the Toombs County Sheriff's Department, where Agent Thompson and Contreras conducted a custodial interview.[5] (Doc. 34-5, p. 4.) Plaintiff stayed at the Toombs County Jail overnight and appeared before Toombs County Magistrate Judge Rizza O'Connor on the morning of May 9, 2015. (Doc. 35-1, p. 60; see doc. 5, pp. 12–13.) At the hearing, Judge O'Connor issued warrants for his arrest for the crimes of possession of hydrocodone, possession of cocaine, and possession of marijuana. (Doc. 5, pp. 12–16.) Plaintiff remained in police custody until he posted bond later that day. (Doc. 35-1, p. 137.)

Sometime after Plaintiff's arrest on May 8, 2015, Chief Walker told Villegas to "prepare a written police report based on the information that he received from the sources who reported the suspected criminal activity to him." (Doc. 34-4, p. 4.) Villegas did not write the report until June 10, 2015, approximately one month later. (Id. at 4; doc. 34-3, pp. 3–4.) In the report, Villegas states that on May 5, he received a call from "the owner of the roofing company" who told him that "the Inspector for the Housing Authority a Kevin (unknown last name) white male driving a white company truck with tool boxes on the sides" tried to sell drugs to one of his workers. (Doc.

---

[5] Agent Thompson and Villegas each arrived at the scene shortly after Contreras placed Plaintiff under arrest. (Doc. 34-3, p. 3; doc. 34-5, p. 4.)

34-3, p. 9.) The report does not distinguish between the initial phone call and Bessent's subsequent statement but does state that "Mr. Kevin Basset [sic] said that he saw where the Inspector had grabbed the drugs from behind the drivers side seat in a white paper napkin." (Id.) According to Villegas, he drafted the report from memory and did not review Defendant Bessent's written statement prior to doing so. (Doc. 34-3 at pp. 3, 6.)

The District Attorney of Toombs County dismissed the charges against Plaintiff on September 15, 2015. (Doc. 34-2, p. 9.) Plaintiff then filed this suit on September 13, 2017.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the

nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson</u>, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County</u>, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Id.</u> (emphasis and citations omitted).

## DISCUSSION

### I. Malicious Prosecution (O.C.G.A. § 51-7-40) & Malicious Arrest (O.C.G.A. § 51-7-1)

Defendant Villegas moves for summary judgment on both of Plaintiff's state law claims asserted against him. (Doc. 34-1, pp. 16, 22.) First, Villegas argues that Plaintiff's malicious arrest claim fails as a matter of law. (Doc. 34-1, pp. 16–17.) The Court agrees. In <u>Ferrell v. Mikula</u>, the Georgia Court of Appeals unequivocally held that, as a matter of Georgia law, a warrantless arrest cannot form the basis for a malicious arrest claim. 672 S.E.2d 7, 12–13 (2008). The <u>Ferrell</u> Court explicitly overruled "any other cases which hold that an arrest without a warrant can constitute false/malicious arrest under O.C.G.A. § 51-7-1." <u>Id.</u> at 13. Here, it is undisputed that Plaintiff was detained after a warrantless arrest. (Doc. 34-5, p. 4; doc. 34-2, p. 5.) Accordingly, Plaintiff's malicious arrest claim fails as a matter of law.

As to his state law malicious prosecution claim, Plaintiff alleges that Defendants acted with "malice" and without probable cause to "initiate[] and maintain[] a criminal prosecution against Plaintiff" in violation of O.C.G.A. § 51-7-40. (Doc. 1, pp. 15–16.) "A claim for malicious prosecution under . . . Georgia law requires showing[:] '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" Green v. City of Lawrenceville, 745 F. App'x 881, 883 (11th Cir. 2018) (per curiam) (quoting Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008)); see Condon v. Vickery, 606 S.E.2d 336, 339 (Ga. Ct. App. 2004) (affirming grant of summary judgment where plaintiff could not prove one element of malicious prosecution claim). Here, elements (1) and (2) are disputed; and, for the reasons explained below, Plaintiff has not put forth sufficient evidence to prove either element. (Doc. 34-1, pp. 17–22.)

As to the first element—prosecution by the defendant—Villegas argues that there is an absence of evidence tending to show that he instituted, participated in, or improperly influenced Plaintiff's prosecution.[6] (Doc. 34-1, pp. 17–19.) In other words, Villegas maintains that Agent Thompson "conducted an independent investigation" and that there is no evidence that any law enforcement official involved in the investigation or Plaintiff's arrest relied on any information provided by Villegas. (Id.) A defendant has not legally "instigated" or "prosecuted" a plaintiff under Georgia law if another individual "made an 'independent decision to arrest or prosecute.'"

---

[6] It is not clear that the proceedings against Plaintiff qualify as a "prosecution." Georgia law provides that "an inquiry before a committing court or magistrate shall amount to a prosecution." O.C.G.A. § 51-7-42. Here, the parties seem to operate under the assumption that Plaintiff's Initial Appearance before Judge O'Connor qualifies as an "inquiry before a committing court." According to the Georgia Court of Appeals, however, "[t]he suing out of a warrant, . . . without more, is not sufficient to sustain a cause of action for [malicious prosecution]." Standard v. Falstad, 779 S.E.2d 682, 685 (Ga. Ct. App. 2015). Regardless, Plaintiff's malicious prosecution claim fails on independent grounds, as explained herein.

Jackson v. Kmart Corp., 851 F. Supp. 469, 472 (M.D. Ga. 1994) (citation omitted) (applying Georgia law). If, however, the evidence demonstrates that a defendant's "persuasion was the determining factor in inducing [another] officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable." Baggett v. Nat'l Bank & Trust Co., 330 S.E.2d 108, 110 (Ga. Ct. App. 1985).

Here, Plaintiff does not cite to, and the Court is not aware of, any evidence indicating that Villegas was responsible for the decision to investigate or arrest Plaintiff or that he gave information that he knew to be false and so unduly influenced the authorities. It is undisputed that Villegas did not communicate with—let alone give information to—Agent Thompson or Contreras, the investigating and arresting officers. (Doc. 34-5, p. 5.) After speaking with Dismuke and Bessent, Villegas followed protocol by informing Chief Walker that he had "received information" about suspected drug activity. (Doc. 34-4, p. 2.) There is no evidence that Villegas mentioned Plaintiff in his conversation with Chief Walker, and it was Chief Walker who subsequently relayed the information to Agent Thompson. (Doc. 34-3, p. 3; doc. 34-4, p. 3.) Additionally, Dismuke personally told Agent Thompson *the exact same information* he had given Villegas, and Agent Thompson stated that he made the decision to investigate Plaintiff based on the information he received from Dismuke and Harrison. (Doc. 34-5, pp. 3–4.) Simply put, the record is devoid of any evidence tending to show that Villegas played any role in the events that actually led to Plaintiff's arrest. See Turnage v. Kasper, 704 S.E.2d 842, 851 (Ga. Ct. App. 2010) ("A distinction must be drawn, then, between actually instigating or procuring the institution of criminal proceedings, and merely providing information to a law enforcement official without in any way attempting to influence his judgment.").

In an attempt to remedy this evidentiary void, Plaintiff argues that the inconsistencies in Villegas' June Report "demonstrate[] [he] created a false report in an attempt to bolster [Plaintiff's prosecution]."[7] (Doc. 40, p. 10.)  However, this argument ignores a crucial detail—it is undisputed that the only action pertaining to Plaintiff's "prosecution" after June 10, 2015 (the day Villegas wrote his report) was *the dismissal of his claims*.  (Doc. 34-2, p. 9.)  Plaintiff was arrested on May 8, 2015, (doc. 34-4, p. 2), released on May 9, 2015, (doc. 35-1, p. 137), and his charges were dropped on September 15, 2015, four months later, (doc. 34-2, p. 9).  It is illogical for Plaintiff to argue that Villegas' June Report, which post-dated Plaintiff's May arrest, somehow played a causative role in that arrest.  Thus, there are no facts from which a reasonable jury could find that Villegas "instituted or continued" Plaintiff's prosecution, a required element of a malicious prosecution claim.  Wood, 323 F.3d at 882.  Accordingly, Defendant Villegas is entitled to judgment in his favor.

Moreover, even assuming, *arguendo*, that Plaintiff has made the necessary showing on the first element, his malicious prosecution claim would still fail as he cannot show a lack of probable cause, the second element.  "Probable cause is absent when the circumstances would satisfy a reasonable [person] that the accuser had no ground for proceeding except a desire to injure the accused." K-Mart Corp. v. Coker, 410 S.E.2d 425, 426 (Ga. 1991) (citing O.C.G.A. § 51-7-43).

---

[7] Plaintiff also points to his deposition testimony where he states that, on one occasion, Dismuke mentioned that he and Villegas were "friends" and that they did "each other favors." (Doc. 35-1, pp. 137–39.)  In his Motion, Defendant objects to this testimony as inadmissible hearsay.  (Doc. 34-1, p. 12.)  Plaintiff fails to explain how this statement could be "reduced to admissible form," and, therefore, it will not be considered by the Court in ruling on Villegas' Motion.  See Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012) (hearsay statement rebutted by admissible evidence cannot be reduced to admissible form and could not be considered at summary judgment stage).  Further, even if this statement could be admitted, the fact that Dismuke and Villegas were friends that did each other favors does not change the Court's analysis.  Particularly given the undisputed facts surrounding Plaintiff's arrest cited above, no rational jury could make the inferential leap from this evidence of friendship that Villegas somehow played a causative role in Plaintiff's arrest.  To do so would require rank speculation.

Said differently, it is not necessary for a defendant to prove that the plaintiff was actually guilty of the at-issue offense; rather, he must show that an inference of guilt was reasonable under the circumstances. See Achor Ctr. v. Holmes, 465 S.E.2d 451, 453 (Ga. Ct. App. 1995).

Here, Villegas argues that the warrants issued after Plaintiff's arrest demonstrate the existence of probable cause (and there is no evidence that the warrants were procured via fake or fraudulent information supplied by Villegas). (Doc. 34-1, p. 20.) The Court agrees. As noted above, it is undisputed that Agent Thompson relied on information he acquired from Dismuke and Harrison—not Villegas—when he sent Contreras to speak with Plaintiff. (Doc. 34-5, p. 4.) Additionally, there is no evidence that Agent Thompson had any reason to doubt the information's veracity. Once Contreras arrived at Plaintiff's work site, Plaintiff consented to the search of his vehicle, which produced the illegal drugs and resulted in his arrest. (Id.) This series of events was recounted in front of Toombs County Magistrate Judge O'Connor, who then signed warrants for Plaintiff's arrest. (Doc. 5, pp. 14–16.) These facts and circumstances—receiving firsthand knowledge of an alleged drug sale and finding drugs in the car of the accused—are such that they would "excite the *belief* in a reasonable mind that plaintiff was guilty of the crime for which he was arrested." Smith v. Tr. Co. Bank, 450 S.E.2d 866, 869 (Ga. Ct. App. 1994) (emphasis original); see Stephens v. Zimmerman, 774 S.E.2d 811, 815 (Ga. Ct. App. 2015) (probable cause present where plaintiff matched descriptions provided by four eyewitnesses but differed from non-eyewitness' description).[8]

---

[8] The Court notes that, even if Plaintiff's false imprisonment claim had not been dismissed, the undisputed circumstances surrounding Plaintiff's arrest indicate that it likewise would have failed at the summary judgment stage. An individual who arrests or imprisons someone without a warrant is "guilty of [false imprisonment], *unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law*." Collins v. Sadlo, 306 S.E.2d 390, 391 (Ga. Ct. App. 1983) (emphasis in original) (quoting Vlass v. McCrary, 5 S.E.2d 63, 64–65 (Ga. Ct. App. 1939)). Under Georgia law, one such exception allows for a warrantless arrest is when "[t]he offense is committed in such officer's presence

As Plaintiff has failed to put forth sufficient evidence to establish that Villegas instituted his prosecution or that Villegas did so without probable cause, he cannot prove essential elements of his malicious prosecution claim.[9]  "The elements of malicious prosecution are listed in the conjunctive; therefore, if [a p]laintiff is unable to prove any of the four elements, his claim necessarily fails." Holland v. City of Auburn, 657 F. App'x 899, 903 (11th Cir. 2016) (per curiam); see also Condon 606 S.E.2d at 339 (affirming grant of summary judgment where plaintiff could not prove one element of malicious prosecution claim).  The undisputed facts establish that Plaintiff cannot prove two of the four elements as to Defendant Villegas.  Thus, the Court **GRANTS** Defendant Villegas' Motion summary judgment as to Plaintiff's state law malicious prosecution claim.

## II.    Section 1983 Malicious Prosecution and Qualified Immunity

### A.    Malicious Prosecution

Plaintiff also asserts malicious prosecution under 42 U.S.C. § 1983, alleging that Defendant Villegas, together with the other Defendants, "acted with malice and without probable cause" to cause his "unlawful" arrest and prosecution.  (Doc. 1, p. 19.)  Malicious prosecution claims brought pursuant to Section 1983 arise under the Fourth Amendment. Uboh v. Reno, 141 F.3d 1000, 1003–04 (11th Cir. 1998).  To establish a viable claim under this theory, Plaintiff must prove: (1) a violation of his Fourth Amendment right to be free from unreasonable seizures; and (2) the elements of the common law tort of malicious prosecution. See Wood v. Kesler, 323 F.3d 872,

---

or within such officer's immediate knowledge."  O.C.G.A. § 17-4-20(a)(1)(A).  Here, Contreras only arrested Plaintiff after he found illegal drugs in Plaintiff's work truck.  (Doc. 34-5, p. 4.)  Therefore, Contreras's arrest of Plaintiff falls squarely under the exception enumerated under Georgia law.

[9] This reasoning provides an additional basis for granting summary judgment on Plaintiff's malicious arrest claim.  A malicious arrest claim, like malicious prosecution, requires that a plaintiff show an absence of probable cause. See O.C.G.A. § 51-7-1.

881 (11th Cir. 2003). Said differently, a plaintiff must establish that he was maliciously prosecuted and that "he was 'seized in relation to the prosecution, in violation of [his] constitutional rights.'" Donley v. City of Morrow, 601 F. App'x 805, 813 (11th Cir. 2015) (per curiam) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1235 (11th Cir. 2004)). In his Motion, Defendant Villegas argues that Plaintiff cannot make either showing. (Doc. 34-1, pp. 17–23.) For the reasons set forth below, the Court agrees.

First, the elements of a Section 1983 malicious prosecution claim mirror those of its state law counterpart; "[t]o prove a § 1983 malicious-prosecution claim, under federal law and Georgia law, a plaintiff must establish," among other things, "a criminal prosecution instituted or continued by the present defendant" and that the defendant lacked probable cause to do so. Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). As laid out above, Plaintiff cannot establish either of these elements. Accordingly, Plaintiff's Section 1983 malicious prosecution claim against Villegas must fail for the same reasons. See Paez v. Mulvey, 915 F.3d 1276, 1292 (11th Cir. 2019) ("Our Fourth Amendment § 1983 probable cause analysis applies with equal force to state common law malicious prosecution claims. The absence of probable cause is a necessary element of common law malicious prosecution."); Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008) (defendant does not institute prosecution where "there [is] no evidence that [the defendant] had anything to do with the decision to prosecute or that [the defendant] had 'improperly influenced' that decision.") (citation omitted).

Additionally, Villegas correctly argues that Plaintiff's claim fails because he "cannot prove a Fourth Amendment violation relating to his prosecution." (Doc. 34-1, p. 23.) Specifically, the undisputed record shows that Plaintiff did not endure an "unlawful seizure" within the meaning of the Fourth Amendment. Villegas notes that Plaintiff was not arrested pursuant to a warrant; rather,

his arrest occurred after the consensual search of his vehicle revealed illegal drugs.  (Id. at pp. 24.)

Because the arrest and detention occurred prior to the initiation of any prosecutorial proceedings,

Villegas contends they cannot serve as the "predicate deprivation[s] of liberty."  (Id. (citing

Kingsland, 382 F.3d at 235).)

To have a viable Section 1983 claim for malicious prosecution, a plaintiff must establish

that his "deprivation of liberty—the seizure—[was] effected 'pursuant to legal process.'"  Singer

v. Fulton Cty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (quoting Heck v. Humphrey, 512 U.S. 477,

484 (1994)).  That is, the seizure must have occurred "following the institution of a prosecution"

or judicial proceeding.  Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996).  "Generally, the

offending legal process comes either in the form of an arrest warrant (in which case the arrest

[thereafter] would constitute the seizure) or a subsequent charging document (in which case the

sum of post-arraignment deprivations would comprise the seizure)."  Nieves v. McSweeney, 241

F.3d 46, 54 (1st Cir. 2001).  However, it is well-established that, "[i]n the case of warrantless

arrest, the judicial proceeding does not begin until the party is arraigned or indicted."  Kingsland,

382 F.3d at 1235.  Further, the "normal conditions of pretrial release," such as bond and a summons

to appear, do not constitute a seizure "barring some significant, ongoing deprivation of liberty,

such as a restriction on the defendant's right to travel interstate."  Id. at 1236.

The Eleventh Circuit Court of Appeals' decision in Kingsland v. City of Miami is

instructive.  The plaintiff in Kingsland was involved in a car accident, and the responding officers

suspected that she was driving under the influence.  Id. at 1223–24.  The officers arrested the

plaintiff—without a warrant—and transported her to jail, where she remained until her father

posted a $1,000 bond the next day.  Id. at 225.  After she was arraigned on charges of careless

driving, reckless driving and driving under the influence, the plaintiff made two trips from New

Jersey to Florida to appear in court on these charges.  Id.  The charges against her were dropped

months later after drug tests came back negative.  Id.  Thereafter, plaintiff filed suit under Section

1983 for false arrest and malicious prosecution.  Id.  In reversing the district court's grant of

summary judgment, the Eleventh Circuit held that "the plaintiff's arrest cannot serve as the

predicate deprivation of liberty because it occurred prior to the time of arraignment, and was 'not

one that arose from malicious prosecution as opposed to false arrest.'"  Id. at 1235 (quoting Meija

v. City of New York, 119 F. Supp. 2d 232, 254 n.26 (E.D.N.Y. 2000)).  The court further explained,

> While we sympathize with [plaintiff]'s anxiety and inconvenience, . . . we cannot
> go so far as to say that the conditions of her pretrial release—which did not
> constitute a significant deprivation of liberty—constituted a seizure violative of the
> Fourth Amendment.  Because [plaintiff] cannot prove a violation of her Fourth
> Amendment right to be free from unreasonable seizures, she does not have a
> cognizable claim for malicious prosecution, and the defendants are entitled to
> summary judgment on the merits of such claim.

Id. at 1236 (citation omitted).

Applying this binding precedent to the present case, the Court finds that Plaintiff did not

suffer a Fourth Amendment seizure "following the institution of a prosecution."  See Whiting, 85

F.3d at 585.  Here, it is undisputed that Contreras arrested Plaintiff without a warrant after finding

drugs in his vehicle.  (Doc. 34-5, p. 4.)  It is similarly undisputed that Plaintiff consented to this

search, and he does not allege that any other aspect of this arrest was unlawful.  (Id.)  Like the

plaintiff in Kingsland, Plaintiff spent a night in jail after his warrantless arrest, (doc. 35-1, p. 60),

appeared before a magistrate judge the next morning, (doc. 5, pp. 12–13), and was released after

posting bond, (doc. 35-1, p. 137).  While Judge O'Connor did sign warrants for his arrest, (doc. 5,

pp. 14–16), Plaintiff, like the plaintiff in Kingsland, offers no evidence or argument that he was

deprived of liberty after his initial appearance, i.e. the commencement of legal proceedings.  Thus,

because the record before the Court establishes that Plaintiff "was [not] seized in relation to the

prosecution, in violation of h[is] constitutional rights," Plaintiff does not have a cognizable Section 1983 malicious-prosecution claim.  See Kingsland, 82 F.3d at 1235.  In light of the foregoing, the Court **GRANTS** Defendant Villegas' Motion on this issue.

### B.    Qualified Immunity

For the reasons explained throughout this Order, the Court finds that none of Plaintiff's claims survive the summary judgment stage and that Defendant Villegas is entitled to judgment in his favor on the merits.  In the absence of any viable claims, the Court need not address the issue of qualified immunity.  See Barker v. Norman, 651 F.2d 1107, 1124 (5th Cir. 1981) ("[I]f the defendant has established beyond dispute that he did not engage in the complained-of conduct, then summary judgment is appropriate. [This] has nothing to do with the qualified immunity defense; rather, it is based on the plaintiff's inability to prove the facts essential to recovery."); Haberle v. Univ. of Alabama in Birmingham, 803 F.2d 1536, 1541 n.3 (11th Cir. 1986) (qualified immunity analysis unnecessary where case was decided on the merits).  However, even if a genuine dispute of material fact existed as to the merits of Plaintiff's claims, Villegas would nonetheless be entitled to summary judgment on the principle of qualified immunity as to Plaintiff's federal claims.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  The doctrine "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  Hoyt v. Cooks, 672 F.3d 972,

977 (11th Cir. 2012) (quotations and citations omitted).  As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery."  Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted).  But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]."  Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority.  Mobley v. Palm Beach Cty. Sheriff Dep't., 783 F.3d 1347, 1352 (11th Cir. 2015).  Specifically, a defendant must show that he or she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).  Here, Plaintiff does not dispute that Villegas was acting within his discretionary authority as a police officer.  (Doc. 40, p. 11.)  Therefore, Defendant Villegas may properly assert the defense of qualified immunity, and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate.  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Court must grant qualified immunity unless the facts taken in the light most favorable to Plaintiff show: (1) that there was a violation of the Constitution; and (2) that the illegality of the Defendant's actions was clearly established at the time of the incident.  Hoyt, 672 F.3d at 977. The Court has discretion in deciding which of those two prongs to address first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In this case, the Court has already determined above that even when viewing the evidence in the light most favorable to Plaintiff, Villegas did not commit

a constitutional violation. Moreover, even if it could somehow be said that he did cause Plaintiff's prosecution in violation of the Fourth Amendment, it cannot be said that the illegality of his conduct was clearly known at the time of the incident underlying this lawsuit.

"[T]he touchstone of qualified immunity is notice." Bussey-Morice v. Gomez, 587 F. App'x 621, 627 (11th Cir. 2014) (per curiam) (citing Holmes, 321 F.3d at 1078). The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right. See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). Under the Eleventh Circuit's framework for applying this step of the qualified immunity analysis, a plaintiff must show that the allegedly violated right was "clearly established" in one of three ways. First, the plaintiff may point to a case with indistinguishable material facts decided by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and "provid[ing] clear notice of the violation." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007). Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct." Id. Finally, the plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009).

Here, Plaintiff has failed to meet his burden. Plaintiff does not cite any controlling or materially similar case law and does not identify "a broad legal principle" indicating that a police officer's intake of allegations of suspected criminal activity and subsequent report to a superior for investigation amounts to a constitutional violation. See Griffin Indus. v. Irvin, 496 F.3d 1189,

1209 (11th Cir. 2007). The Court's own research has likewise revealed none. Finally, Plaintiff has not shown that Villegas' conduct was "so egregious as to violate . . . the Fourth Amendment on its face." Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Thus, Plaintiff is unable to overcome Defendant Villegas' qualified immunity defense, and even if Plaintiff demonstrated facts amounting to a constitutional violation, he is insulated from liability for violations of federal law.

## III. Conspiracy

Although Plaintiff does not explicitly state a civil conspiracy claim, Defendant moved for summary judgment on the issue. (Doc. 34-1.) Nonetheless, any such claim fails as a matter of law in the absence of any viable underlying claims. See GJR Invs. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998), *abrogated on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010) ("To sustain a conspiracy action under § 1983, . . . a plaintiff must show an underlying actual denial of its constitutional rights."); McIntee v. Deramus, 722 S.E.2d 377, 379 (2012) ("[T]he conspiracy of itself furnishes no cause of action."). Because the Court finds that Plaintiff's claims against Defendant Villegas lack the factual support necessary to survive the summary judgment stage, the Court **GRANTS** Defendant Villegas' Motion as to Plaintiff's conspiracy claims.

## IV. Damages

### A. Punitive Damages

Plaintiff also argues that he is entitled to punitive damages pursuant to Georgia law, O.C.G.A. § 51-12-5.1(b). Plaintiff contends that such damages are warranted because Defendant's actions show that he has acted "in bad faith." (Doc. 1, p. 17.) Under Georgia law, punitive damages may only be awarded if there is a valid claim for actual damages to which it could attach;

punitive damages may not be recovered if there is no entitlement to compensatory damages. O.C.G.A. § 51-12-5.1(b); see J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 449 (Ga. Ct. App. 2007). For the reasons discussed above, Plaintiff cannot recover on any claims against Defendants under Georgia law. Without any remaining underlying claims, Plaintiff is not entitled to punitive damages, and the Court **GRANTS** Defendant Villegas's Motion on this issue.

**B.     Attorney's Fees**

Plaintiff also requests attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11 and 42 U.S.C. § 1988. (Doc. 1, pp. 17, 19.) Like a claim for punitive damages, a claim for attorney's fees under Georgia law requires a viable underlying claim. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1316 (11th Cir. 2004) (citing United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601 (Ga. 1996)). The same principle applies when a Plaintiff seeks to recover attorney's fees under federal law. See 42 U.S.C. § 1988 (providing that the court may allow "the prevailing party, other than the United States, a reasonable attorney's fee"). Because none of his claims survive summary judgment, Plaintiff's claims for attorney's fees also fail. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant Villegas on this claim as well.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Villegas' Motion for Summary Judgment, (doc. 34). The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **TERMINATE** Defendant Villegas as a party to this case. Plaintiff's counsel shall file a status report with **fourteen days** of this Order. In that report, counsel shall update the Court on the status of his claims against the remaining Defendants and stating how Plaintiff intends to proceed in this case. Plaintiff's report shall include, but not be limited to, an explanation of whether he asserts any federal claims against any remaining defendants and whether

this Court still has jurisdiction over this matter following the dismissal of all federal claims against Defendant Villegas.

**SO ORDERED**, this 28th day of September, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA